**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **DIANE BLANN,** | ) |
| | ) |
|    **Judgment Creditor,** | ) |
| | ) |
| v. | ) |
| | ) |
| **OPAL EVELYN ROGERS, administrator** | ) |
| **of the estate of GARRY WAYNE REED,** | ) |
| **deceased,** | ) |
| | )  **Case No. 11-2711-CM** |
|    **Judgment Debtor,** | ) |
| | ) |
| v. | ) |
| | ) |
| **AMERICAN STANDARD INSURANCE** | ) |
| **COMPANY OF WISCONSIN,** | ) |
| | ) |
|    **Garnishee.** | ) |

## MEMORANDUM AND ORDER

The case arises out of a double-fatality motor vehicle accident involving cars driven by Bryan Blann and Garry Wayne Reed. At the time of the tragedy, Mr. Reed was insured by American Standard Insurance Company of Wisconsin ("American Standard"). Plaintiff Diane Blann—Mr. Blann's wife—attempted to settle with American Standard after the accident, but eventually took a judgment against Mr. Reed's estate for over $2.5 million. Plaintiff agreed not to execute the judgment against the Reed estate, and the administrator of the Reed estate assigned any rights the estate had against American Standard to plaintiff. Plaintiff sought to recover the full judgment from American Standard for negligent or bad faith handling of the insurance claim. After conducting a bench trial, this court entered judgment for plaintiff in the amount of $2,536,676.28. Now pending before the court is

Garnishee American Standard Insurance Company's Post-Judgment Motions Pursuant to Rules 52, 59 and 60 of the Federal Rules of Civil Procedure (Doc. 170).

American Standard contends that this court erred in a number of ways:

(1) The court incorrectly concluded that the Reed estate was excused from cooperating with American Standard;

(2) The court erroneously concluded that the agreement between the administrator of the Reed estate and plaintiff was not collusive;

(3) The court's decision on causation was wrong;

(4) The court's application of the *Bollinger*[1] factors was unsupported by the evidence; and

(5) The court included two incorrect Findings of Fact in its order.

**I.      Standards of Review**

   A.      Rule 52

Rule 52(b) provides that, upon motion by a party, the court may amend its findings or make additional findings and may amend the judgment.  Fed. R. Civ. P. 52(b).  "A motion made pursuant to Rule 52(b) will only be granted when the moving party can show either manifest errors of law or fact, or newly discovered evidence; it is not an opportunity for parties to relitigate old issues or to advance new theories."  *Penncro Assocs., Inc. v. Sprint Spectrum L.P.*, No. 04-2549-JWL, 2006 WL 1999121, at *2 (D. Kan. July 17, 2006) (citing *Myers v. Dolgencorp, Inc.*, No. 04-4137-JAR, 2006 WL 839458, at *1 (D. Kan. Mar. 25, 2006)).  A motion under Rule 52(b) may accompany a Rule 59 motion.  Fed. R. Civ. P. 52(b).

   B.      Rule 59

Following a bench trial, the court may grant a new trial on some or all of the issues "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court."  Fed. R.

---

[1] *Bollinger v. Nuss*, 449 P.2d 502 (Kan. 1969).

Civ. P. 59(a)(1)(B). Under Rule 59(a)(2), "[a]fter a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." "[T]he purpose of a Rule 59(a)(2) motion is to correct manifest errors of law or fact, or, in some limited situations, to present newly discovered evidence." *Waugh v. Williams Cos., Inc. Long Term Disability*, 323 F. App'x 681, 684–85 (10th Cir. 2009) (internal citations and quotations omitted).

A Rule 59(e) motion is similarly limited. *See Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1186 n.5 (10th Cir. 2000). It provides the court with an opportunity to correct manifest errors of law or fact, to hear newly discovered evidence, or to consider a change in the law. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Neither a Rule 59(a) nor a Rule 59(e) motion is the appropriate avenue to revisit issues already considered or to argue matters not raised in prior briefs. *Id.*; *Waugh*, 323 F. App'x at 684–85.

C. Rule 60

American Standard does not specify which provision of Rule 60 it intends to invoke. American Standard quotes both Rule 60(a)—regarding mistakes—and Rule 60(b), but much of subsection (b) appears inapplicable. The court will assume that American Standard is seeking relief under Rule 60(a), 60(b)(1), and 60(b)(6).

Rule 60(a) permits the court to correct a "clerical mistake or a mistake arising from oversight or omission." Fed. R. Civ. P. 60(a). Rule 60(b)(1), on the other hand, permits the court to relieve a party from final judgment when the "judge has made a substantive mistake of law or fact in the final judgment or order." *Utah ex rel. Div. of Forestry, Fire & State Lands v. United States*, 528 F.3d 712, 723 (10th Cir. 2008) (internal quotations and citation omitted). And the "catch all" provision of Rule 60(b)(6) allows for relief only when it "offends justice" to deny relief. *Loum v. Houston's Rests., Inc.*,

177 F.R.D. 670, 672 (D. Kan. 1998) (citation omitted). Rule 60(b)(6) relief is reserved for "exceptional circumstances." *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 576 (10th Cir. 1996) (internal quotation marks and citation omitted). "Arguments that the court misapplied the law or misunderstood a party's position are properly brought under Rule 59(e), but do not justify relief under Rule 60(b)." *Rojas v. Am. Postal Workers Union*, No. 94–1083–JTM, 1998 WL 288665, at *1 (D. Kan. May 5, 1998) (citation omitted). And a party may not use a Rule 60(b) motion to raise arguments that he could have raised earlier. *Smilde v. Mortgage Temps, Inc.*, 22 F. App'x 957, 958 (10th Cir. 2001) (citation omitted).

**II.     Discussion**

A.     Excusal from Cooperation

American Standard first asks the court to reconsider its conclusion that the Reed estate was excused from its contractual duty to cooperate. In support, American Standard reargues its position that releasing the Reed estate from its duty to cooperate will invite rampant collusion between plaintiffs and insureds. The court understands American Standard's policy concerns, but agrees with its prior decision. In the absence of Kansas law directly on point, the court utilized the legal principles it deemed most applicable. The breaches by American Standard in this case were numerous and severe. The court believes (and hopes) they are unique. Given American Standard's breaches, the court declines to amend its conclusion that the Reed estate was excused from its duty to cooperate.

B.     Collusive Agreement

American Standard's second argument is that the court incorrectly determined that the settlement agreement between plaintiff and the Reed estate, as well as the judgment, was reasonable. American Standard contends that the court failed to correctly apply the two-step reasonableness test

-4-

and all nine factors identified in *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 934 P.2d 65 (1997).

The court did not engage in extensive analysis when evaluating whether the settlement agreement was collusive (and, under that analysis, whether it was reasonable). But the court did note the points that were key to its decision:

- The parties agreed for a trier of fact to determine liability and damages;
- Plaintiff agreed to be bound by the court's judgment; and
- The findings on liability and damages are supported by the record.

The court maintains that its abbreviated discussion—if considered in conjunction with the other analysis in its Memorandum and Order (Doc. 164)—is sufficient to support its decision that the settlement agreement was not collusive. Significantly, the court has flexibility in evaluating the *Americold* factors. The factors are merely recommended "[f]or guidance beyond factors suggested by the facts . . . ." *Americold, Inc.*, 934 P.2d at 87 (citation omitted). Nevertheless, to ensure that the record is clear, the court amends its decision with the following analysis.

The court will enforce a settlement against an insurance company when it is (1) reasonable in amount and (2) reached in good faith. *Glenn v. Fleming*, 799 P.3d 79, 93 (Kan. 1990) (citation omitted). The plaintiff initially bears the burden to show these elements. *Id.* But the ultimate burden of persuasion rests with the insurer. *Id.* In *Americold*, the Kansas Supreme Court identified a number of factors that the court could address when evaluating reasonableness:

> the releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of parties not being released.

934 P.2d at 87 (citation omitted). The court addresses these factors below.

### 1. *The releasing person's damages*

Plaintiff's damages are substantial. The case involved the death of a man who was a father, husband, and wage earner. The precise amount of damages is somewhat immaterial; under any calculation, the value is high.

American Standard's argument on this factor is that "the underlying trial court made no finding as to the likelihood of Plaintiff['s] recovery of such enormous damages in the event of trial." (Doc. 171 at 14.) American Standard compares this case to *Phillips v. Phillips*, Nos. 105,349, 105,748, 2013 WL 1444259 (Kan. Ct. App. Apr. 5, 2013), as if the cases were in the same posture. But the *Phillips* appellate court was reviewing a trial court determination that a <u>consent judgment</u> was fair and reasonable. 2013 WL 1444259, at *7. Here, this court is reviewing a state trial court's judgment that was entered after an <u>ex parte bench trial</u> on liability and damages. This court would not have expected the state trial court to consider the likelihood of plaintiff recovering damages at a different trial. American Standard's argument is not applicable in this context.

### 2. *The merits of the releasing person's liability theory*

The court understands that American Standard has continually contested liability in this case. Evidence exists to support a finding that either the Reed vehicle or the Blann vehicle was at fault. But the stronger theory throughout the case has been that the Reed vehicle was at fault. This is the conclusion that the Highway Patrol reached initially and maintained. After reviewing all of the evidence in this case, the court agrees with the Highway Patrol. The merits of plaintiff's theory are strong. They were at the time of the settlement, and they remain strong.

### 3. *The released person's relative faults*

The representative of the Reed estate—Ms. Rogers—did not believe that her son was at fault. But the bulk of the evidence points to his fault. Although the court that entered judgment did not hear

argument supporting the theory that the Reed vehicle was blameless, the court did see the statements of the witness who believed that the Blann vehicle crossed the center line. The statements were inconsistent and unconvincing.

With respect to this factor and the next four factors, American Standard merely repeats its argument that the journal entry makes no reference to the factor. But again, this argument is misplaced. The state trial court was not deciding whether a consent judgment was fair and reasonable (like in *Phillips*). Rather, the state trial court in this case was evaluating liability and damages to enter judgment. This court would not expect to see a discussion of the *Americold* factors in this context.

### 4. *The risks and expenses of continued litigation*

The risks and expenses of continued litigation likely would have been high. As noted previously, liability in this case was strongly contested. Both Mrs. Blann and Ms. Rogers would have had to endure numerous disputes and a trial, where they would have to listen to testimony about the deaths of their husband and son (respectively). In cases involving the loss of a loved one, the cost to those proceeding with litigation can be magnified.

### 5. *The released person's ability to pay*

The Reed estate had assets valued between $100,000 and $200,000. Certainly, these assets would not cover the full judgment entered, but it is likely that any unfavorable judgment would have drained the estate of its value.

### 6. *Any evidence of bad faith, collusion, or fraud*

This is the only factor that gives the court some pause. Certainly, the court does not find evidence of bad faith, collusion, or fraud on the part of Mrs. Blann. And this is not a case where plaintiff and the Reed estate agreed to an amount of damages and asked the court to enter a consent judgment, as in *Phillips*. Instead, they agreed to an ex parte bench trial.

Plaintiff agreed to accept the judgment—favorable or unfavorable. And counsel prepared a proposed journal entry, but left blanks for the court to calculate damages. *Cf. Brockmann v. Bd. of Cnty. Comm'rs of Cnty. of Shawnee*, 404 F. App'x 271, 281 (10th Cir. 2010) (criticizing a journal entry that was drafted by the parties and included findings and damages). The damages are supported by evidence and reasonable given the circumstances of this case. The hearing transcript may only span twenty-four pages, but the relatively small amount of oral testimony does not render the court's decision unsupported. The court also reviewed reports, photographs and other documents.

This is not to say that the court blindly approves of the method by which plaintiff's counsel obtained the judgment. Nevertheless, American Standard left both plaintiff and Ms. Rogers with little choice but to seek agreement amongst themselves. American Standard failed to properly communicate with either of them, and they were left to speculate about the outcome of the case. In the end, the court determines that plaintiff met her burden to show that the settlement was not the result of bad faith, collusion, or fraud. Once the burden shifted to American Standard, the insurance company failed to meet its burden.

7. *The extent of the releasing person's investigation/preparation of the case*

Neither party makes a relevant argument as to this factor. It does not weigh significantly in either direction.

8. *The interests of parties not being released*

This factor is not relevant here.

9. *Conclusion*

After reviewing all of these factors, the court concludes that its prior order was correct in determining the settlement agreement was reasonable. Nearly all of them weigh in plaintiff's favor,

and plaintiff met her burden of demonstrating reasonability and good faith.  American Standard, on the other hand, failed to meet its ultimate burden of persuasion.

        C.     Causation

The court next turns to whether it erred when it determined that plaintiff established causation between American Standard's negligent or bad faith actions and the entry of judgment against the Reed estate.  American Standard argues that this case is unlike either *Roberts v. Printup*, 595 F.3d 1181 (10th Cir. 2010), or *Wade v. EMASCO Insurance Co.*, 483 F.3d 657 (10th Cir. 2007).  Instead, for the first time, American Standard compares this case to *Blanco-Diaz v. Maus*, No. 103,916, 2012 WL 718919 (Kan. Ct. App. Mar. 2, 2012).  American Standard also reiterates its position that plaintiff's initial settlement demand had an unreasonable, arbitrary deadline.

American Standard makes no argument that merits alteration or amendment of the judgment.  It has not shown that the court committed a manifest error of law or that the law changed.  Rather, American Standard is relitigating old issues.  American Standard disagrees with the court's causation decision, but disagreement does not justify alteration or amendment.  The court denies American Standard's request on causation.

        D.     *Bollinger* Factors

For its fourth point of error, American Standard argues that this court's conclusions as to three *Bollinger* factors are against the weight of the evidence.  Specifically, American Standard takes issue with the court's analysis of (1) the strength of the case for liability and damages; (2) the failure to properly investigate; and (3) the financial risk at stake.

First: the strength of the case.  American Standard contends that the court focused too much on Trooper Gatlin's preliminary report.  Had American Standard been given more time to investigate, it could have gathered more information and opinions that would have supported Ms. Traffas's concerns

with Trooper Gatlin's preliminary report. Respectfully, the court disagrees. In the court's eyes, the case was strong for Mr. Blann at all relevant time periods. The court's determination is not against the weight of the evidence.

Second: the failure to properly investigate. Here, American Standard continues to argue that Ms. Traffas's reservations were justified. American Standard cites Ms. Traffas's own testimony in support of its position that the witness statements Ms. Traffas relied upon were consistent. The court understands that Ms. Traffas believed she was relying on consistent and reliable evidence. The court strongly disagrees with her assessment. The court further concludes that she failed to use ordinary care in her investigation. This conclusion is not against the weight of the evidence and does not merit reconsideration.

Third: the financial risk at stake. The court stated, "The insured had over $2.5 million at stake." American Standard takes issue with this statement because the insured estate had assets of only $100,000 to $200,000. This is a fair point. A more proper assessment of this factor would be an acknowledgment that the entire value of the Reed estate was at risk. The court amends its order accordingly. But this amendment does not change the outcome of the *Bollinger* factors.

### E.    Incorrect Findings of Fact

Finally, American Standard contends that two of the court's Findings of Fact are erroneous: (1) paragraph 23, regarding Ms. Traffas's conversation with Trooper Gatlin on March 30, 2011; and (2) paragraph 59, which concludes that American Standard only complied with one of the claim guidelines listed in paragraph 58.

The court declines to amend paragraph 23. American Standard asks the court to find that "Trooper Gatlin also informed Ms. Traffas on March 30, 2011 that her final conclusions would be subject to revision by her supervisors." (Doc. 171 at 24.) This representation is not entirely correct.

Ms. Traffas's testimony at trial was that Trooper Gatlin told Traffas the report was pending review by her supervisors. The court's finding of fact is accurate. The report was not final, but Trooper Gatlin indicated that she did not intend to change it. A finding that Trooper Gatlin's supervisors could have revised the report is unnecessary.

As for paragraph 59, the court could have acknowledged that American Standard eventually sent a letter suggesting that damages could exceed policy limits. This letter was sent by an attorney (not an adjuster), and it does inform the insured that the claim could exceed policy limits. But American Standard sent the letter after the lawsuit was filed. The fact remains that Ms. Traffas failed to comply with American Standard's guideline. In any event, whether American Standard complied with one or two of the guidelines is immaterial. The failure to comply with the other identified guidelines is overwhelming and outweighs the compliance. The court also declines to amend this Finding of Fact.

**IT IS THEREFORE ORDERED** that Garnishee American Standard Insurance Company's Post-Judgment Motions Pursuant to Rules 52, 59 and 60 of the Federal Rules of Civil Procedure (Doc. 170) is denied in part and granted in part. The amendments identified in this order are incorporated in the court's Findings of Fact and Conclusions of Law. The ultimate result of the case, however, remains the same.

Dated this 4th day of December 2014, at Kansas City, Kansas.

                                                s/ Carlos Murguia
                                                **CARLOS MURGUIA**
                                                **United States District Judge**